I want to thank you and I'd like to reserve if I could and I will do my best to watch the counter five minutes for rebuttal. May it please the Court, this is one of many recent cases involving the enforcement of an arbitration clause in a consumer contract following the Supreme Court's seminal decision in Concepcion from April of last year. In denying our motion to compel arbitration, Judge Siebel committed three errors, but he first noted Concepcion and struggled with the implications of Concepcion and then even found that it may impend doom for the Montana rules that he relied upon for denying the motion to compel arbitration. And in that regard we have three major errors, well three errors, that he committed. The first was he used the Montana anti-arbitration policy to deny our motion to compel and if it was not directly hostile to arbitration, it was applied in a manner that disfavored arbitration and which frustrated the... Is that what he called it? No, he did not. And then he used that policy to reject the New York choice of law, which we had in the agreement and had been argued back and forth that under New York law we would have prevailed on a motion to compel arbitration. So in those three instances we've come back and looked at what did he call, as Judge Schroeder said, his anti-arbitration policy and he cloaked it in the sheep's clothing of reasonable expectations. But now, if the arbitration clause is invalid, you don't reach the New York law issue, do you? That is correct, but in the earlier part of the agreement it did say, and I don't think there's a blowup clause, that in interpreting this clause you use New York law. So he had to reject New York law in order to apply Montana law to deny the motion to compel arbitration. I do think he had to do that. By the way, isn't it a bit of overstatement to say that he's cloaking like an anti-arbitration policy and reasonable expectations if that language and that doctrine kind of preexisted in the state law? I don't think it's an exaggeration, Your Honor, because if you look at the Doctors Associates case, which came out of Montana and to the U.S. Supreme Court, the Supreme Court struck down a requirement that arbitration be specified on the first page of the agreement and that it be underlined and in capital letters. Now, in that Doctors Associates opinion, there was a footnote that suggested, because this was an unconscionability analysis, that at argument they raised reasonable expectations, which they did not reach. And I think that was the cue to the courts in Montana to say, okay, the statute which had been struck down, now we have some room to run, we'll call it reasonable expectations, and change that hostility to arbitration to a judicial doctrine that said, well, you've got to initial it and you have to have it explained. And as it turns out, I think with Concepcion and then the Ninth Circuit's decision in Key Bank and with Conniff, that we have a rejection of those kinds of requirements. I think that the initials are no different than what was struck down in Doctors Associates. But if you look at the Kloss case, which was the genesis of having to explain arbitration to the other party, there was a fiduciary duty in that case. And even another case in Montana, Bixler from Helena, thinks Kloss has been preempted by Concepcion. But in Key Bank, this court, this circuit, also looked at an argument that the party benefiting from the arbitration, so to speak, that put it in there, did not explain it to the opposing party. And that was rejected as a grounds for finding it unconscionable. So when I say he's cloaked it in the sheep's clothing of reasonable expectations, if it was unconscionability, I think we win right off the bat. As reasonable expectations, because a fundamental right of access to the courts and access to judicially monitored discovery, I still think we win directly because arbitration is giving up access to the courts. That's by definition what you do. But you still have a right of appeal to the courts. You can still get an injunction if the party is dissipating assets so you can stop them. And the complaining party can stop the defendant from dissipating assets. And the ultimate award is appealable. So in that aspect, I do think it is cloaked. However, if we go the next step to as applied, in other words, was this test fundamental or reasonable expectations based on fundamental rights applied to disfavor arbitration, we don't have to look any further than Judge Siebel's opinion dismissing the privacy claims and the invasion of privacy and ECPA, the Electronic Communications Privacy Act claims. What he did in that decision is say the same subscriber agreement that had the arbitration clause in it had a paragraph saying subscribers are going to have their transmissions monitored. And Judge Siebel had no hesitation in saying, even though there's a constitutional right of privacy in Montana, just like there is for access to the courts, that that was waived. They were put on notice. And in fact, Judge Siebel even said in that same opinion, you should read this agreement carefully because it affects your terms. He quoted that. But he had no problem in saying that the privacy claims were gone because there was consent. There was no explanation. There were no initials. That fundamental right of privacy went by the wayside, which I think proves the disparate impact, the disfavoring of using that same test to reject arbitration. Okay. Thank you. With few exceptions, a number of federal district and appellate courts have also found that the broad language of Concepcion required them to jettison prior state law policies and doctrines and required consumers to individually arbitrate. And we do have a class action waiver in our agreement. But the one thing that I think was missed is that the arbitration agreement that Bresnan had in their agreement was very pro-consumer. If you have small claim under $1,000, the only fee you have to pay is $15, and Bresnan takes the rest of the filing fee and pays the fees of the arbitrator or arbitrators to resolve it. So small claims will probably be vindicated faster and more cheaply in arbitration than they ever would. Well, it's not as favorable as the one in Concepcion, is it? Well, we can argue, yes, that there were certain opt-outs and certain other things, but I thought for an under $1,000 claim for $15, that's almost, you know, that's an expensive lunch, and people would be able to get their claims resolved. And the reason I'm staying with the under $1,000 is that I don't think the damages in this case, if you look at the individuals, one of the companion cases out of Kansas, the Embark case, which is now up on appeal in the Tenth Circuit, the court there, in dismissing the CFAA and the invasion, I mean the trespass to chattels claims, which are the same two that are pending here, said the plaintiff's experts that were hired by plaintiff's counsel's here firm found that there was no damage to the computers, no degradation of Internet service, and so dismissed those claims. So I'm not sure we're going to be litigating or even arbitrating many claims when we get down to it. And when this case started, when the case was originally brought, it wasn't in Montana. It was in the Northern District of California. And the allegations were that it was Nebuad, this company that has this ad-serving device called a universal, I'm sorry, transparent. It's UTA. I should have remembered the exact words. But that particular device was installed by Nebuad, and the ISPs, the Internet service providers like Bresnan and the others, were aiders and abettors or assistants in both the wiretap violations and the Computer Fraud and Abuse Act violations. When we were dismissed for personal jurisdiction purposes from the Northern District of California, six of the cases were brought around the country, two in Montana, one in Kansas, I think one in Northern District of Illinois, and maybe another one in Georgia, against the ISPs for where they were located, which Bresnan was in Billings. And they changed the allegations to be instead of Nebuad doing the bad deeds, it was the ISP. It was now Bresnan that installed this, even though I think in the Embark decision that it's clear that it was not the ISPs that did this and that there was no damage that was caused. And ultimately, the Northern District of California case was settled. I think that's in our pretrial statement, which is one of the excerpts of the record. And to show that the arbitration might have been better, in that case, attorney's fees were paid, incentive payments were made to the class representatives. There were payments made to privacy advocacy groups, but I don't think a dime went to any of the class members individually. Your Honor. The underlying claim here is in part, then, for violation of federal law. Yes, absolutely, Your Honor. And in Concepcion, I don't recall that that was the case. Well, there have been a number of cases, and Keybank is one that came out of this court, where there have been allegations of federal law. And even if there is a state law claim, it's still the federal policy, if you're in federal court, to enforce the contracts to have arbitration. And it's only Congress, not the state legislature or a state judge, that can say this is a kind of case. Well, I understand the argument, but it does seem a bit odd to say that the policy of the Federal Arbitration Act, which is just a couple of paragraphs, trumps the federal statutes that provide for causes of action in federal court in order to enforce things like the antitrust laws. Well, yes, and Judge Rakoff, when he goes back east, will have to deal with the Second Circuit's Amex decision, which did find that those antitrust cases could survive. But in Conniff, this court said it's distinguishable, and if it's not that Amex case, we were not going to follow it. You don't want us to follow Amex no matter what? No, Your Honor. Did you want to save some time for rebuttal? Thank you very much. Can I respond to Mr. Camber? Okay, Mr. Scott Camber. Thank you, and good morning, Your Honors. The defendant attributes the motive here to the court that does not exist and wrongly portrays Montana as hostile to arbitration. He does it in his words. He does it in his argument. The hostility is something that just simply does not exist in Judge Siebel's opinion of the lower court, and it does not exist in Montana law. Montana, in fact, has liberal policies and liberal laws favoring arbitration. When one looks at what has gone in Montana and other decisions, that when a court views a fundamental right as being violated or as being impacted, there are particular rules that they follow. Reasonable expectation of the consumer in this case in a contract of adhesion is one of those situations, and the court did not apply that law any differently because this was an arbitration clause. It applied the law as it is written, a law that on numerous other occasions has been found and has upheld arbitration clauses and has struck down clauses that are not arbitration clauses. In particular, if you look at one case that Appellant has just referenced, that is a recent case, the Bixler case, found applying almost the exact same analysis performed by Judge Siebel, both of them post-concepcion, and the court in Bixler found in a securities case that the arbitration clause was enforceable. In fact, that arbitration clause followed much more similarly to concepcion and there was no question about the reasonable expectations of the weaker party being fulfilled. It is interesting when one looks at that case in particular, but also in comparison to the jurisprudence of Montana, including the May case, which is quoted extensively in clause. In May, it was almost the same analysis, or it was the same analysis that was performed to state that a choice of personal jurisdiction and a waiver of personal jurisdiction to Colorado from Montana should not be applied. It has nothing to do with an arbitration clause. It simply is applying the reasonable expectation test to a contract of adhesion in Montana. Where it may be effective, or at least an argument to be made on appeal before this court, it is simply not what was happening on the ground in Montana. There is simply no hostility towards arbitration clauses and, in fact, this contract in this situation was apprised, evaluated, and found to be wanting, the arbitration clause that is, by Judge Siebel. The stronger, what appears to be the primary argument that is made by appellant as to why Judge Siebel is in error focuses, interestingly enough, on the fundamental right to privacy. Now, the fundamental right to privacy, which I wish the law was as clear as... Going back to your previous point for just a second, is it a question of hostility in the sense of some intended hostility, or is it a question of disparate impact? If, in fact, the reasonable expectation rule is applied in the great majority of instances against or in arbitration context, though it may be applied in others, isn't that sufficient for your adversary's position to say, therefore, it's frustrating the federal policy? Well, clearly a concepcion leaves the door open to look at policies that do have a disparate impact. I think in this situation there is simply no evidence, no record, and no case law support in Montana for that type of disparate impact. If one looks in Klaus' case, there is a litany of fundamental rights, and there are cases out there in Montana for each of these rights. Be present for court proceedings, effective assistance of counsel, right to privacy, right to a clean and healthful environment, right to confront accusers, right to pursue employment, right to a unanimous verdict. There just is no evidence, except for the argument without support, made by appellant, that there may be a disparate impact. Certainly it is not indicated in Judge Siebel's opinion, and it is not indicated in the jurisprudence of Montana law. The most interesting point I think that appellant makes is that regarding the fundamental right to privacy. In many ways I wish that it was as clear as appellant has made it out to be, because we lost on the motion to dismiss, and that's obviously not right for consideration before this bench here today, we lost what we view to be the most significant and probably the strongest claim in the case on the motion to dismiss, that under the under ECPA. But the court did find that it applied standard contract principles. It did not apply a heightened analysis. And the reason for that is the right to privacy, as it has developed by the Montana Supreme Court, does not apply a right of policy as a fundamental right between two private parties. But in fact applies a right, what has been accepted thus far by the Montana Supreme Court, and we hope this changes moving forward, but at the present time the only fundamental right to privacy recognized in Montana is by state action. And therefore, on many levels we wish the appellant was right here, because it is not our intention to win the battle and to lose the war. Unfortunately, we can't come here and keep that from this court, and in fact we would not necessarily live to fight another day if indeed we did not come here and point out that to date, the fundamental right to privacy in Montana is that of state action, not of private action. What are your federal claims that you're trying to assert here that are still in the case? The federal claim, I think it is the Computer Fraud and Abuse Act. Yeah. It's the Computer Fraud and Abuse Act. And the damage claim, what's interesting also is the appellant's argument regarding that there's no damage, and it strays a bit from the record here. The Embark case, in fact, is on appeal. That is on appeal on an issue of summary judgment, not on a motion to dismiss. It is similar. It had moved forward. And we do take exception to the explanation of the Nebuad case in San Francisco in that resolution because it did provide things that arbitration could not provide. That is injunctive relief. That is cypre. And obviously this court has considered on many occasions, and I've been before this court with arguments regarding cypre. And, you know, Nebuad dealt with cypre in a way consistent with this court's jurisprudence, and that certainly has been found by this court to be of value. What can you get under the Computer Fraud and Abuse Act? There's not statutory damages. It is based on actual damages. I will say that we have not given up hope on our claim under ECBA and the statutory violation. And ultimately what is at stake here we think is a very important principle. The UTA, the appliance mentioned by appellants in their argument, is something that has the ability to and was used to monitor all of the Internet traffic, the IP protocol traffic that went from their computers of the customers of Resnick through. And they used it then to look at this information in order to focus advertisements back at those consumers. It did so, we think, without consent, and we think in clear violation of ECBA. These cases are, there's four or five of these cases still pending around the country, and this is an issue. It's a very interesting issue because it's one of the times that we don't believe that we've commandeered into an interesting application, but one in which there's actually an interception as needed. Now that's obviously not before the court today, but I didn't want to let it stand what the appellant indicated, that there are A, that there's either no damages in this case, or B, that we got something in WED that we couldn't get here in arbitration, or 3, that our case is so weak and it isn't based upon, you know, anything or any good science or any good forensics, et cetera. This is a case that both sides have been litigating vigorously now for, well, I guess it's going on four years since the original, I think since the original case was brought, and we're still here disputing, you know, dealing with arbitration motions and motions to dismiss. That is unfortunate, but that is, you know, somewhat the world in which we live. It is what it is. It is what it is. So as we move forward. Well, it's a great, it's a great contribution to the legal economy. So I would hope that, I hope in the end that that is not the only contribution that I have made. Maybe much to the chagrin of some of those in this courtroom today, but ultimately as we look at this situation, Your Honors, we see that the court did not make three errors. We do not see that Montana had the anti-arbitration tendencies or biases indicated by appellants, nor the hostile approach. The Montana, I don't think we really get to it, but I think that the court properly applied Montana's choice of law here. And I'd like to end by going through a bit of an analysis on the, on a point that I think is particularly, in contrasting the clause in the AT&T case, excuse me, in the AT&T Concepcion case, the arbitration clause with the clause here, because it's been suggested by appellant that somehow this clause is as favorable as that clause. I think there's, there's one fundamental, fundamental difference more than anything else. And that is in Concepcion, the plaintiff signed the agreement, initialed the agreement. There was evidence of consent. We all know that when we go into our phone stores, we sign, we sign the agreements. Do we acknowledge it, et cetera. In this situation, I think first and foremost, and the court had pointed this out, that the plaintiff never signed the agreement. The agreement was never presented to the plaintiff to be signed. You know, how that impacts the privacy rights and the clauses that waived statutory damages and federal statute, plaintiffs don't believe, we believe that in the motion to dismiss, the court erred by not applying the standard because we believe that a statutory, a waiver of statutory rights, federal statutory rights must be a knowing and informed waiver. The same type of waiver that I frequently face as a class action attorney, making sure that the notice provisions to the class specifically deal with and are the best practicable in order to deal with informed statutory notice. But here, that's not what's before the court. What's before the court is the issue of the fundamental rights. And applying this to the fundamental rights, this were not signed. It was not consented to. It was not initial. It was never even given to the plaintiffs prior to the service being installed. It was something, as the record reflects, was a pamphlet that was put into a package of information given to new subscribers after the service has been installed. So first and foremost, I think that is a particularly important point that the court makes. It was presented as the costs of the arbitration itself. Here, in the Concepcion case, AT&T was to pay all the costs of arbitration. Here, there's a somewhat convoluted and complex way about paying the filing fees and about under certain situations being liable for other costs. There were precedents to dispute resolution in this case that did not exist in the AT&T case. The arbitration, very important in the AT&T, in the Concepcion, arbitration occurs in the consumer's home county. In this case, the arbitration, based on written submissions, unless made for by public telephone, in person, the arbitration occurs in the state where the AAA is located. So Appellant makes the argument there are no significant damages at stake here, that it's nominal. Yet the arbitration itself will take place at the location of the AAA outside the state of Montana. The arbitrator can't award attorney's fees to any party, although there are certain exceptions provided that would allow the awarding of attorney's fees. AT&T in the Concepcion is unable to seek reimbursement of attorney's fees. The claims in AT&T could be brought in small claims court. This is silent as to that. The arbitrator has the power to issue individual injunctions and punitive damages. An important point that is from the Nebuad case, and in almost every other privacy case that I've been involved with, and in this situation the arbitrator is not allowed to award any damages, not punitive damages, nor allowed to award injunctive relief because it's not enumerated in the agreement. And ultimately that completely frustrates any privacy case because our system as it stands today doesn't fully acknowledge the economic value of privacy rights and so we are left with constructions of how much storage space did it take up on my computer? How many of my resources did it drain? All that becomes particularly important and becomes rights that cannot be vindicated in an arbitration clause and especially an arbitration clause such as this one. And so, you know, if this court were to decide to overturn the district court for any reason, I would think it would need to be remanded for developing a record on the Concepcion ability, which at this point has just been alluded to by the parties, not fully developed. And I think that upon close examination it is very clear that this is no Concepcion. This is not Concepcion in any way, shape, or form. And for this court, I would ask that they reject appellant's request that they overturn well-established Montana jurisprudence that is applied equally across all fundamental rights and not completely undo the savings clause of the FAA nor of footnote 6 in Concepcion. Thank you very much. Thank you, sir. Okay, Mr. Seaver, you have a rebuttal of Mr. Camber's argument. Thank you, Your Honor. A couple of quick points. The Bixler case that was referred to, and I'm quoting, it's 2012 Westlaw 877-109, District of Montana. What they said in that is the clause rule in validating arbitration clauses when a broker acting as a fiduciary does not adequately explain an arbitration clause to the client is preempted by the FAA, and that was on star 8 in my version. In the MBARC case, when we were talking about the damages, plaintiff's experts, and I'm quoting from 2011 Westlaw 365-1359 at star 3, plaintiff's expert admitted that Nebuledge UTA, and I was informed it's the ultra-transparent appliance. The UTA did not degrade the performance of any customer's Internet service, and plaintiffs have stipulated that Nebuledge UTA caused no damage to any MBARC customer's computer. And finally, as far as what Judge Siebel did with the right of privacy, he says plaintiffs, by using Bresnan's Internet service, consented to Bresnan's monitor and use of plaintiff's electronic communications, and cites a state case that says, per n, although discussing the heightened constitutional right to privacy, Montana Supreme Court stated that once a person voluntarily consents to an invasion, his constitutional right to privacy disappears. And this is in 2010 Westlaw 514-0454 at star 6. In closing, if I might just say, Concepcion was a difficult case for many courts to take,  most courts have come out saying we had it wrong before, we have to compel arbitration, with two exceptions to the Second Circuit in the American Express case. And struggling with the implications, though, how valiant as it was, still resulted in us seeing that the policies of Montana courts, either Kloss, Iwin, or any of the others, whether you cloak it in reasonable expectations, discriminate against arbitration, the fundamental aspects of arbitration, or were applied, especially here, because of the way the privacy interest was dealt with. And if you look at the briefs, there were only two cases mentioned which we distinguished, where it looked like there could be an argument that reasonable expectations was applied outside of access to the courts, that really what was going on was changing the cloak of the anti-arbitration policy. Whether it was really hostile to it, or it's just not preferred, doesn't matter, it was applied in a way that took away the right to arbitrate. And the courts that have been reluctant to enforce these agreements because of state policies that appeared neutral have now realized, yes, these policies... So is disparate impact enough, even if there's not subjective hostility? Yes, it is, Your Honor. That was completely left there by Concepcion as an alternative ground, because so many of these policies that look like they deal with formation, like fraud, duress, and unconscionability could, on the face, appear to be applicable generally, not specifically to perhaps adhesion contract with arbitration clauses, but said, yes, if they are applied to disfavor and there's a disparate impact, then yes, that still would be preemptive. But now your adversary says that, in fact, that there hasn't been a disparate impact in this case, or at least there's no evidence below of it. What about that? That's my argument that when the constitutional right to privacy was put by the wayside and the plaintiff's claims were dismissed there, that that reasonable expectations test was nowhere mentioned, nowhere argued, didn't come into play. So if a constitutional right, a fundamental right, can be lost because of our agreement in one paragraph, then our multiple paragraph agreement on arbitration surely didn't need to be separately initialed and explained. That's the disparate impact of the reasonable expectations test in our case. No, no, no, I'm not, well, maybe I made, I see, all right, I understand what you're saying. Okay, go ahead. So what we've asked the court to do is to reach the conclusion that we think the district court should have, which is to say Concepcion has changed the landscape dramatically, the cases relied upon by the district judge are no longer good law, and that for that reason the district court should be reversed and the plaintiffs be compelled to arbitrate. Thank you very much. Thank you. Okay, the Mortensen case shall be submitted. I want to thank counsel for, I suppose, winning the prize for traveling the farthest to help us today, from New York and D.C., and we appreciate it. Very nicely argued on both sides.
judges: Rakoff, Schroeder, Gould